UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LYNN HARTIGAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 13-10540-TSH |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR ORDER REVERSING DECISION OF COMMISSIONER (Docket No. 19) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING DECISION OF COMMISSIONER (Docket No. 25)
**August 4, 2014**

HILLMAN, D.J.

This is an action for judicial review of a final decision by the Commissioner of the Social Security Administration ("SSA") (the "Commissioner") denying Lynn Hartigan's ("Plaintiff") application for Social Security Disability Insurance Benefits ("DIB"). Plaintiff filed a motion seeking an order reversing the decision of the Commissioner (Docket No. 19), and the Commissioner filed a cross-motion seeking an order affirming the decision of the Commissioner (Docket No. 25). For the reasons set forth below, Plaintiff's motion is denied, and the Commissioner's motion is granted.

### Procedural History

Plaintiff filed an application for DIB on October 29, 2009 claiming she had been disabled

since July 1, 2003, the alleged onset date ("AOD"). (R. 91, 164-70, 231).[1] Plaintiff's claim was denied in December 2009, and again upon reconsideration in June 2010. (R. 106-108, 113-15). In August 2010, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 116-17). An ALJ held a hearing on November 2, 2011. (R. 30-60). On December 16, 2011, the ALJ issued a decision finding Plaintiff was not disabled under the Social Security Act. (R. 10-29). The Appeals Council denied Plaintiff's request for review on November 21, 2012, making the ALJ's decision the final decision of the Commissioner. (R. 1-5).

Facts

*Personal and Employment History*

Plaintiff was born on February 28, 1972, making her 31 years old on her AOD and 36 years old as of December 31, 2008, her date last insured. (R. 164). She is a high school graduate and has completed some college. (R. 33). Plaintiff previously worked as a daycare teacher at a preschool. (R. 34, 175).

*Medical History*

In February 2009, Plaintiff saw her primary care physician, Dr. Nandini Chitre, for a complete physical examination. (R. 405). Dr. Chitre noted that she was seeing Plaintiff for the first time after a long absence, as her last physical examination was in 2001. (R. 405). Plaintiff complained to Dr. Chitre of right hand numbness and parethesias. (R. 405). Dr. Chitre's impression was carpal tunnel syndrome of the right hand, for which Plaintiff was given a wrist brace. (R. 405).

Plaintiff saw Dr. Chitre again in March 2009, complaining of pain, tingling, and numbness in her right hand that often woke her from sleep. (R. 460). Plaintiff told Dr. Chitre

---

[1] A copy of the Administrative Record ("R.") has been provided to the Court under seal (Docket No. 14).

that this had been going on for some time, but was getting worse and that she wanted it to be checked out. (R. 460).

In April 2009, an EMG of Plaintiff's right hand was conducted. (R. 436). The EMG was compatible with severe carpal tunnel in the right hand. (R. 436).

In November 2009, Plaintiff submitted a Function Report to the SSA in connection with her DIB application. (R. 182-190). Plaintiff described her daily routine as waking up, getting her children up and feeding them, driving them to the bus and picking them up, preparing dinner, getting her children ready for bed, and watching television. (R. 182). She stated that her husband did the laundry and others things she could not do. (R. 183). She said she had no problem with personal care. (R. 183). Plaintiff stated that she had daily pain that affected her sleep and that she could not sit or stand for more than a half hour at a time. (R. 183). Plaintiff stated that she cooked meals and cleaned a little, but that yard work was too difficult. (R. 184-85). She stated that she was able to drive, went out a few times a day, shopped for food, and that she visited her sister-in-law a couple of times per week. (R. 185-86).

On December 7, 2009, Shankar Narayan, an SSA medical consultant, completed a Physical Residual Functional Capacity ("RFC") Assessment through Plaintiff's date last insured. (R. 248-255). The consultant found that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk at least 2 hours in an 8-hour workday, and could sit for 6 hours in an 8-hour workday. (R. 249). The consultant further found Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, and should avoid concentrated exposure to hazards such as machinery and heights. (R. 250, 252).

In January 2010, Plaintiff saw Dr. Shashidhara Nanjundaswamy for a neurology consult for left leg and hand numbness. (R. 503-506). Dr. Nanjundaswamy noted that Plaintiff was

involved in a sledding accident at the age of 5 which resulted in a curtain rod penetrating her skull and causing traumatic brain injury, and since has lost use of her left arm and leg to a considerable degree. (R. 503). Dr. Nanjundaswamy further noted that Plaintiff had recently experienced left leg splints and stress fractures. (R. 503). Dr. Nanjundaswamy stated that Plaintiff has little functional use of her left upper extremity. (R. 505). Dr. Nanjundaswamy also stated that Plaintiff had been diagnosed with severe carpal tunnel in April 2009 and that despite surgery Plaintiff had significant wasting and weakness of the right hand median innervated muscle, causing her to have limited use of her right upper extremity as well. (R. 505). Dr. Nanjundaswamy noted that Plaintiff historically had significant pain in her right lower extremity, and that her left lower extremity was spastic with a spastic hemiparesis.

On June 26, 2010, Dr. Robert McGan completed an RFC Assessment through Plaintiff's date last insured. (R. 256-263). Dr. McGan found Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, could stand and/or walk at least 2 hours in an 8-hour workday, and could sit for 6 hours in an 8-hour workday. (R. 257). Dr. McGan found Plaintiff was limited in her ability to push and pull controls with her lower extremities. (R. 257). He further found Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl, and should avoid concentrated exposure to hazards such as machinery and heights. (R. 258, 260). Dr. McGan noted that there were findings of sensory carpal tunnel syndrome on the right, but found Plaintiff had no impairment or manipulative limitations. (R. 259).

Plaintiff saw Dr. Daniel Tanenbaum for rehabilitation of her left spastic hemiparesis. (R. 514). In notes from September and October 2011, Dr. Tanenbaum noted Plaintiff's history of osteoarthritis of the right lower extremity, carpal tunnel syndrome of the right wrist, and symptoms of numbness and paresthesias of the right hand. (R. 514, 517-18, 520, 524). Dr.

Tanenbaum also stated that Plaintiff was independent with activities of daily living and could drive. (R. 514, 518 520, 524).

*Hearing Testimony*

Plaintiff testified that she had carpal tunnel syndrome in her right hand. (R. 36). She testified that she had surgery for the carpal tunnel syndrome, but that it failed. (R. 36). A vocational expert ("VE") described the job of systems surveillance monitor to Plaintiff. (R. 36). The VE stated that the job would involve watching surveillance cameras and occasionally calling 911 or security if a problem arose. (R. 36). The VE told Plaintiff she could wear a headset and push a button, maybe once per day or never. (R. 36). The ALJ asked Plaintiff if she thought she could perform this job. (R. 36). Plaintiff testified that she did not believe that she could because her pain limited her from being able to sit or stand for any amount of time. (R. 36-37).

The ALJ asked Plaintiff's counsel if he had an objection to the ALJ calling Dr. Tanenbaum on the phone so that he could give them some information. (R. 43). Plaintiff's counsel stated that there was no objection. (R. 43). Upon questioning, Dr. Tanenbaum stated that he had been seeing Plaintiff for years and was familiar with her situation. (R. 45). The VE described the job of systems surveillance monitor to Dr. Tanenbaum, explaining that the job would involve sitting in a room looking at surveillance cameras and maybe once per day, or none at all, calling security if there was a problem. (R. 45-46). The VE further explained that the job would involve using one's eyes to look at cameras, that one could sit or stand at will on the job, that lifting no more than a piece of paper would be required, and that no walking would be required. (R. 45-46). Dr. Tanenbaum stated that he believed Plaintiff could perform such a job. (R. 46).

Plaintiff's counsel told Dr. Tanenbaum that they had been discussing Plaintiff's problems with grip and manipulating small objects. (R. 46). Counsel then asked how familiar Dr. Tanenbaum was with Plaintiff's record. (R. 46). At this point Dr. Tanenbaum made a statement that was inaudible and thus does not appear in full on the transcript. (R. 47). The ALJ then stopped counsel's questioning and asked Dr. Tanenbaum if he could fax over Plaintiff's medical records. (R. 47). Dr. Tanenbaum stated that he would do so right away. (R. 47). The ALJ told counsel, "sorry I couldn't give you a cross-examination, but we will get the records that you seek." (R. 47). Counsel did not object to proceeding in this manner. (R. 47, 61).

The ALJ presented a hypothetical question to the VE that contained all of the limitations ultimately found by the ALJ in his Residual Functional Capacity ("RFC") determination. (R. 17, 58-59). The VE testified that someone with the hypothetical limitations posed by the ALJ could perform the job of systems surveillance monitor. (R. 59).

*The ALJ's Findings*

To be found eligible for DIB, an applicant must prove that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). When determining whether an applicant meets this standard, the Commissioner uses a "five-step sequential evaluation process." 20 C.F.R. § 404.1520 (a)(4). This process requires the Commissioner to decide (1) whether the applicant is engaged is substantial gainful activity; if not (2) whether the applicant has a severe medical impairment; if so (3) whether the impairment meets or equals one of the listings in the Listing of Impairments, 20 C.F.R. § 404, subpart P, Appendix 1; if not (4) whether the applicants RFC allows her to perform her past relevant work;

6

and, if not (5) whether, considering the applicant's RFC, age, education, and work experience, the applicant could make an adjustment to other work. *Id*. Any jobs that an applicant could adjust to must exist in significant numbers in the national economy. 20 C.F.R. § 404.1560.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her AOD through her date last insured. (R. 15). At step two, the ALJ found Plaintiff had the following severe impairments: left upper extremity dysfunction due to hemiplegia, obesity, arthritis of the right foot, left foot planovalgus deformity, and drop foot of the left foot. (R. 15). At step three, the ALJ found that, through her date last insured, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P. (R. 17). At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (R. 24). The ALJ determined Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a)[2] except that she would need the option to sit or stand at will, could perform no repetitive motions with the upper extremities, could have only occasional contact with others, and could perform no bending, kneeling, or climbing. (R. 17). The ALJ found the Plaintiff was 36 years old on her date last insured, which is defined as a younger individual, has at least a high school education, and is able to communicate in English. (R. 24). In light of these factors and Plaintiff's RFC, at step five the ALJ found Plaintiff could perform jobs, such as that of a surveillance monitor, that exist in significant numbers in the national economy, and therefore was not disabled from the AOD through the date last insured. (R. 24-25).

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasional lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. *Id*. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. *Id*.

7

Discussion

Plaintiff argues the Commissioner's decision should be reversed because the ALJ erred by setting the onset of a medically determinable impairment to the day it was medically confirmed rather than when the symptoms arose, and because the ALJ violated the SSA's requirements that the claimant be given notice of an expert witness being called to testify at a hearing and violated Plaintiff's Due Process Rights by prohibiting her from cross-examining that witness.

*Standard of Review*

Review by this Court is limited to whether the Commissioner's findings are supported by substantial evidence and whether he applied the correct legal standards. *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996); *see also Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When applying the substantial evidence standard, the court must bear in mind that it is the province of the Commissioner to determine issues of credibility, draw inferences from the record evidence, and resolve conflicts about the evidence. *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Reversal of an ALJ's decision by this court is warranted only if the ALJ made a legal error in deciding the claim, or if the record contains no "evidence rationally adequate . . . to justify the conclusion" of the ALJ. *Roman-Roman v. Comm'r of Social Security*, 114 F. App'x 410, 411 (1st Cir. 2004); *see also Manso-Pizzaro*, 76 F.3d at 16. If the Commissioner's decision is supported by substantial evidence, it must be upheld even if the record could arguably support a different conclusion. *Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987).

*Whether the ALJ Erred in Determining the Date of the Onset of Plaintiff's Medically Determinable Impairment*

Plaintiff claims the ALJ erred when he concluded Plaintiff's carpal tunnel syndrome was a non-severe impairment because the diagnosis occurred on April 21, 2009, after Plaintiff's date last insured. Plaintiff contends the ALJ failed to follow Social Security Ruling ("SSR") 83-20 as he did not call a medical expert to determine the disability onset date of the carpal tunnel syndrome and notes that Plaintiff's medical records indicate symptoms of carpal tunnel prior to the diagnosis.

Courts in this District have consistently found that SSR 83-20 only applies when an ALJ finds a claimant is disabled; therefore, the ALJ was not required to follow the SSR in this case. *Silverio v. Astrue*, 2012 WL 996857, *6 (D. Mass. 2012) ("An ALJ is not required to consider SSR 83–20 unless the ALJ first finds that the claimant was disabled at some point prior to the date last insured."); *McDonald v. Astrue*, 2011 WL 3562933, *10 (D. Mass. 2011) ("if, as here, the ALJ finds that the claimant was not disabled during the relevant period, there is no requirement that the ALJ determine the onset date."); *Biron v. Astrue*, 2010 WL 3221950, *6 (D. Mass. 2010) ("a determination concerning the onset of disability does not need to be made unless an individual has been determined at some point to have been disabled during the insured period.").

Additionally, the record shows no evidence of treatment for carpal tunnel syndrome prior to Plaintiff's date last insured, with Plaintiff's first complaint of right hand numbness being made in February 2009, a complaint of worsening symptoms in March 2009, and then finally a diagnosis of carpal tunnel syndrome in April 2009. (R. 405, 440, 460). The record also supports a finding that Plaintiff was not completely limited in the use of her upper right extremity. In her November 2009 function report, Plaintiff noted she performed many activities of daily life, such

as cooking and driving. (R. 182-189). Dr. Tanenbaum's records from fall 2011 similarly state that Plaintiff could drive and was independent in her activities of daily life. (R. 514-24). Both of Plaintiff's RFC assessments state that Plaintiff had no manipulative limitations as of her date last insured, including the RFC assessment completed by Dr. McGan which specifically noted Plaintiff's carpal tunnel syndrome. (R. 251, 259). The record thus substantially supports the ALJ's RFC finding that Plaintiff somewhat, but not completely limited in the use of her upper right extremity.

Moreover, even if the ALJ did err regarding the onset date of Plaintiff's carpal tunnel syndrome, this was not a reversible error. Plaintiff argues the ALJ's finding that Plaintiff's carpal tunnel syndrome was a non-severe impairment resulted in the ALJ presenting a hypothetical to the VE which did not include all of Plaintiff's limitations, specifically that it did not include an impairment of the dominant upper extremity. Therefore, the VE's answer could not constitute substantial evidence. *Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). However, the ALJ is required to consider both severe and non-severe impairments when formulating a claimant's RFC, and the record reflects that the ALJ did so in this case. 20 C.F.R. § 404.1545(a)(2). The ALJ notes that he considered the entire record and all symptoms when formulating the RFC. (R. 17). The ALJ discusses in his opinion Plaintiff's right hand carpal tunnel syndrome and her testimony that she could perform a job if she did not use her upper extremities for significant activities. (R. 17, 21). Significantly, the ALJ included in his RFC the limitation that Plaintiff could not perform repetitive motions with *either* of her upper extremities. (R. 17).

Based on the foregoing, ALJ did not commit reversible error in relying on the testimony of the VE based on the hypothetical question that included all of the limitations the

ALJ included in Plaintiff's RFC.

*Whether the ALJ Violated the SSA's Requirements and Plaintiff's Due Process Rights*

Plaintiff next argues that this case should be remanded because Plaintiff was neither given notice that Dr. Tanenbaum would be called to testify at the hearing, nor the opportunity to fully cross examine Dr. Tanenbaum, violating the SSA's requirements and Plaintiff's due process rights. Plaintiff notes that the SSA's "Hearings, Appeals, and Litigation Law Manual" ("HALLEX") requires the ALJ to provide the claimant notice of the appearance of any witness. HALLEX I-2-6-15. It also states that "[t]he claimant and the representative have the right to question the ME fully on any pertinent matter within the ME's area of expertise." HALLEX I-2-6-70. Moreover, as the Supreme Court has stated that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S. Ct. 1011, 1021 (1970).

The Commissioner does not refute Plaintiff's contention that these violations occurred, arguing instead that Plaintiff waived any claims regarding the testimony of Dr. Tanenbaum, and even if these claims were not waived, no reversible error occurred, as substantial evidence to support the ALJ's decision exists without the testimony of Dr. Tanenbaum. This Court agrees. In *Richardson v. Perales*, the Supreme Court found that a Social Security claimant's inaction in requesting an opportunity for cross-examination of a reporting physician meant he was "precluded from now complaining that he was denied the right[] of…cross-examination." 402 U.S. 389, 405, 91 S. Ct. 1420, 1429 (1971); *see also Mills v. Apfel*, 244 F.3d 1, 8 (1st Cir. 2001) (Social Security claimant waived issue when she failed to raise it at hearing in front of the ALJ). Here, The ALJ asked Plaintiff's counsel if he had an objection to the ALJ calling Dr. Tanenbaum on the phone so that he could give them some information, and Plaintiff's counsel stated he had

no objection. Further, counsel did not object when his cross-examination was cut short, even when the ALJ said "sorry I couldn't give you a cross-examination, but we will get the records that you seek." Despite being given the opportunity to object both to Dr. Tanenbaum being called and to cross-examination being cut short, Plaintiff's counsel never did so. As such, Plaintiff is barred from now raising the issue.

Even if this were not the case, remand or reversal would not be appropriate because any error regarding Dr. Tanenbaum's testifying at the hearing was harmless, as the ALJ's decision is supported by substantial evidence without Dr. Tanenbaum's testimony. *Newcomb v. Astrue*, 2012 WL 47961 (D. Me. 2012) report and recommendation adopted, 2012 WL 206278 (D. Me. 2012) (finding that even if claimant's due process rights were violated by ALJ's exclusion of testimony, Plaintiff had not made showing of prejudice necessary to warrant reversal and remand). The ALJ's decision first states that the VE testified that an individual with Plaintiff's RFC could perform occupations that in significant numbers in the national economy. (R. 25). The decision then goes on to note that, *in the alternative*, Dr. Tanenbaum's testimony suggests Plaintiff could perform positions that exist in such significant numbers. (R. 25) (emphasis added). The ALJ concludes that "[b]ased on the testimony of the vocational expert" claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, and therefore a finding of "not disabled" was appropriate. (R. 25). The ALJ's decision therefore makes clear that the testimony of the VE alone was sufficiently to enable him to find Plaintiff "not disabled." Therefore, calling Dr. Tanenbaum to testify or curtailing Plaintiff's cross-examination had no effect on the ultimate outcome.

## **Conclusion**

For the reasons set forth above, Plaintiff's Motion for Order Reversing Decision of

Commissioner (Docket No. 19) is ***denied*** and the Commissioner's Motion for Order Affirming Decision of Commissioner (Docket No. 25) is ***granted***.

SO ORDERED.

                                                    ***/s/ Timothy S. Hillman***
                                                    **TIMOTHY S. HILLMAN**
                                                    **UNITED STATES DISTRICT JUDGE**